Thank you, Your Honors. Carolyn Wiggin for the Federal Defender's Office for Mr. Foy, and I will try to reserve two minutes for rebuttal. Your Honors, in this case, Mr. Foy was charged not only with multiple forcible sex offenses, but as to each count, the prosecution alleged an enhancement for kidnapping. The more serious kidnapping enhancement, the one which the jury did find true, carried a penalty of 25 years to life beyond the sentence for the counts. So it was a very important part of the trial. Now, in preparing for trial, Mr. Foy discovered evidence that it was Ms. O's practice when she worked as a prostitute to initially direct her customer to drive her to a remote location where they could avoid police detection. Because Mr. Foy's theory was that Ms. O was working as a prostitute on the night in question, he sought to introduce this evidence or to cross-examine her about it by being allowed to question her about it on cross-examination. Now, in conjunction with its rape shield law, California has a procedure that does allow a defendant to attack the credibility of a complaining witness by introducing evidence of the complaining witness's sexual conduct in the past. I take the position that the evidence he wanted to introduce, evidence about the initial steps in the prostitution transactions, was not actually sexual evidence. But even if it was sexual evidence, Mr. Foy complied with California's notice requirement. This distinguishes this case from Nevada v. Jackson and Michigan v. Lucas, where the Supreme Court recognized that sometimes a State's notice requirements can trump a defendant's Sixth Amendment and due process rights to a fair trial. In this case, Mr. Foy did comply with California's notice requirement. Counsel, where is the clearest statement in the record that what he wanted to cross-examine her about was her, I guess you could say, practice of directing customers to take her to a remote location? Your Honor, if you look at page ER volume 2, pages 116 to 117, this is the hearing on the motion in limine before trial. And at the bottom, the court tells the defense attorney, if she admits it, meaning the fact of two prior convictions for prostitution, that's what's impeachable. The defense lawyer says, and just to be able to get to the court's ruling clear, may I show, if I do ask her about the conviction and she admits the conviction, does that preclude me from going into the conduct? And I think that what he means is the conduct, which they had been talking about, of her starting these transactions by directing her customer to drive her somewhere. Or do I have to wait until she denies the fact of conviction to be able to bring in the officer, to be able to prove up the ultimate conduct? And the court says, I think you have to wait for her to deny the conviction. So I think what the court is saying is that if she admits the conviction, you cannot go into questions about the conduct, meaning directing the customer to drive her. So my question is, and thank you for pointing out this place in the record. But my question is, where's the clearest indication that the conduct was not just the fact of the prior convictions or the other conduct relating to those events with undercover officers, but was instead the practice of having her customers take her to an out-of-the-way location? Okay. And I'm, I mean, he files a motion, which is in the CT, asking to get those in. And I'm just going backwards here in the transcript of the hearing. If this is the place, I don't want you to use up all your time. If you think it's going to be right here, that probably answers my question. But if there's something else I'm missing, I'd want to know it. Just, I mean, in my brief, I talk about the back and forth where the judge says, you know, you can't use this to prove consent. And he says, I want to use the driving to prove that she consented to the transportation, not consent to sex. So I think that is what the back and forth is about. I think you've answered my question. Thank you. So, Your Honors, again, I believe that the fact that he wasn't allowed to go into this in cross-examination also distinguishes this case from Nevada v. Jackson, where although the defendant was not allowed to prove up extrinsic evidence, he was given what the Supreme Court called wide latitude to cross-examine regarding the complaining witness's prior uncorroborated rape complaints. Now, we don't dispute that there is a balance that can take place between the policies protected by rape shield statutes and the defendant's right to present a defense. Certainly, the purpose of the rape shield statute is to prevent irrelevant and unfair harassment of a complaining witness. But here, the evidence our client wanted to admit was relevant to the defense theory with regard to the kidnapping enhancement. No one disputed its accuracy. If you look at the court of appeal decision, one of the issues the client raised was there should have been a hearing about this. And the court of appeal says no, because no one disputed it was accurate. The only question was whether it was going to come in. We contended it didn't actually involve a sex act, but actually a sort of commercial transaction, a conversation about negotiating a commercial transaction. Actually, sex didn't happen in any of the instances that my client actually wanted to introduce. It was not offered for the point of consent to sex, but consent to transportation. And the jury was already well aware that Ms. O sometimes worked as a prostitute. She said, I sometimes work as a prostitute. She admitted her two prior convictions. So given that the jury already knew this, this fact that our client wanted to admit into evidence or to cross-examine about would not have further denigrated her in the jury's eyes. If the Court has no questions, I'll reserve my remaining time. Thank you. Thank you, counsel. May it please the Court. My name is Ryan McCarroll, and I represent the Respondent, the Warden in this case. The appellant is not entitled to federal habeas corpus relief because the denial of his claim in state court could not have been contrary to or an unreasonable application of clearly established Supreme Court authority because there is no clearly established Supreme Court authority in this context. The appellant relies primarily, it appears, on Davis and in the reply brief also on Olden. Those cases involved defendants who were attempting to introduce evidence to prove the witness's motive to lie. And the Supreme Court has recognized that proving motive to lie is a core element of the Confrontation Clause. This case presents a far different scenario. The defendant in this case is attempting to introduce evidence of an extrinsic event in order to establish not motive, but modus operandi. Essentially, the appellant is trying to introduce evidence to prove that the victim acted in conformity with her conduct. Do you have any question that that was what she was trying to do in the trial, to show that this was the method in which this victim operated? Do I have any question? I don't have any doubt that the appellant properly raised the claim in the trial court and that the state courts adjudicated the claim on the merit. Appellant did present this evidence and give fair notice that they wanted to use it or that the defendant wanted to use it to prove both consents to the sex crime and consent to the asportation. And the State appellate court specifically recognized that. And I believe that's in the opinion, and I believe it's in excerpts of record 32 and 33. So we've always proceeded as though this claim is not procedurally marred. And the relevant, the evidence she sought to introduce is very relevant to the kidnapping charge, right? You're not contesting that, are you? Well, the primary area that we're contesting is whether or not it's been clearly established by the Supreme Court to be constitutionally protected. I understand that. I'm asking a different question. Are you contesting the relevance of the evidence? No. No. And I believe in our brief we said, we assumed that if this was not subject to a deference and if this Court were to apply some sort of balancing without giving any sort of reference to the State court, that it would meet a threshold basis of relevance and it wouldn't be excludable for that reason. Opposing counsel's argument is that it was disproportionately outweighed. What is your response to that? Well, the Supreme Court has never conducted a weighing process involving these sorts of interests on either side of the balance. They've never considered a case in which the defendant wants to prove conduct and conformity with character, and they've never considered a case in which the State has an interest under the Rape Shield Law, and even if it's not within the four corners of the Rape Shield Law, like Appellant claimed, the same sorts of interests. So my question is a little different. My question is that opposing counsel takes the position that this evidence was disproportionately outweighed. What's your position to it? Well, that it was reasonable for the State courts to say that it was, that the potential for prejudice outweighed the probative value. Why is that? Her position, as I understand it, is that this individual wasn't really shielded from much at all, because the jury heard that she has prior convictions for prostitution. But that for the defendant, it was very relevant to the aspiratation charge. So I'm not trying to be clever here. I just want to know what your response is. Well, Rape Shield Laws, like Federal Rule of Evidence 403 and Federal Rule of Evidence, I believe it's 405, prohibitions on, impose prohibitions on introducing extrinsic events. So it's not just about shielding the victim from embarrassment, but it's also about directing the jury's attention towards what really matters and preventing mini-trials. So in this case, Appellant wanted to introduce four separate instances in which the victim supposedly prostituted herself, only two of which resulted in convictions and only three of which involved the victim actually getting into the cars of the undercover officers. So in order to establish, and all of them involving different locations, none of them involving either the location where this crime began or where it was, or where the sex offenses were consummated at the park. So this would create an entire mini-trial. But suppose it were just the two, that the two where there was no dispute that she had been convicted for being a prostitute, and the attempt was to introduce evidence showing that in those two episodes, she directed the victim to a secluded place, not the victim, the customer, to a secluded place, would that have been a mistake? I think a State court or a reasonable, fair-minded jurist could decide that that was still not admissible, that that would, that the fact of the conviction is admissible, as it was admitted here, but the details of exactly where the crime occurred, how she engaged in the acts of prostitution, that that would just be, that sort of extrinsic event would just cause too much of a mini-trial, too much confusion. I don't understand your comment about mini-trial. Let's assume, for example, that the testimony is elicited that she has the two convictions, and a simple question is posed. And in both those convictions, you got into the car, yes. And you told the officer where to go to have sex. Those are two questions. I don't understand why you think there's a mini-trial. Well, first, you don't know that she would have said yes. Well, if she said no, then you do have impeachment problems. Then we do have a mini-trial at that point. Well, you know, this is trial. These things happen all the time. It's not a mini-trial within a trial. You have admissibility, and then you have some, you can have different evidence. But I don't understand your mini-trial argument or what it has to do with any of this. Well, Your Honor is right. This does happen all the time. But it has never happened in the context of a U.S. Supreme Court case. And for a depth of purposes, that's all that matters. Right. Well, I understand your argument, but we're trying to get a little deeper in the case so that we understand if there's a problem to begin with. I mean, if there's no constitutional error, then we don't have to worry about whether it's a Supreme Court case or not. I mean, or we don't have to work our way through the double deference of it. So we understand the deference. We understand your argument. But I'd like an answer. Why wasn't this relevant evidence to the kidnapping charge? Why, why, why? I guess I'd like your response is to defend the trial court's decision on the merits in the first place. Well, it was a reasonable decision. On the defendant's side of the balance, we have never disputed that it would be relevant. But on the State's side of the balance, there is the interest in the rape shield laws, not only about sparing the victims from unnecessary embarrassment, and which is involved not only in their embarrassment, but encouraging them to come forward and report crimes, and knowing that the trial is not going to turn around and be accusatory towards them. I mean, that is the sort of ---- Counsel, that would make a lot more sense if the jury hadn't been told that she had prostitution convictions, wouldn't it? No. I mean, if the jury knows that, what is she being shielded from? How is this ---- how does that work? Well, the State courts found that the manner in which she engaged in prostitution was particularly prejudicial. Because she was a streetwalker. Is that what you're referring to? Yes. And that is at least reasonable. I'm not just saying that everyone would agree with that. But it's a reasonable position. And Judge Thomas, just going back to the question of adepta deference, I just wanted to clarify, to the State's mind, the proper way of analyzing a claim under adepta is first to look at what is the clearly established law and then to apply it. I understand your argument. I'm just ---- I'm asking a different question that you don't seem to want to answer, which is fine. But you're retreating to your initial position. That's fine. I understand that part of your argument. I just don't understand this other part of the argument. I thought you might help clarify it. Well, that it's ---- that in any sort of balancing scenario, the question is can a ---- could a reasonable jurist have agreed with this position. And it's our ---- it's the State's position that, yes, a reasonable jurist could agree with precisely the position that the trial court took here. And precisely ---- Well, did the California Court of Appeal, I assume, was it the final decision in this case? Was it the Court of Appeal or the Supreme Court? The Court of Appeal issued the last reasoned decision. So wouldn't you argue that it's enough to say that there must be at least one reasonable judge on the California Court of Appeal? That there was at least one, that there were all three. Well, but you don't need three, do you? All you need is one reasonable jurist. Well, that's correct. So it must be, unless you want us to say all three are unreasonable jurists. So we don't have to go beyond the fact that the Court of Appeal took your position?  So the State's position is every time there is an appeal from a State decision, we ought to automatically dismiss the appeal, because we can't say all of the California jurists are unreasonable. No, we're not prepared to go that far. No? I thought you were prepared. No. That in this case, the State court issued a ---- not only a reasonable decision, but it was a very well-reasoned decision. But it has to be a reasonable jurist that could take the position. Excuse me? I'm sorry. It has to be whether a reasonable jurist could take the position. Yes. So there must be at least one reasonable jurist on the California Court of Appeal. Yes. Doesn't that end the case? As I understand Your Honor's question, and I see that my time has expired. All right. It's a little facetious, so I won't take any more of your time. Thank you. Thank you, Your Honors, and I'll be brief. It definitely sounds like we're all thinking about the same issues. Can you tell us how we answer the question of whether an erroneous position is a reasonable position, and how we resolve that under AEDPA? How do we determine that? Well, you know, that is a great question. What is the difference between erroneous and clearly unreasonable? You know, I certainly think the California Court of Appeal for the Third DCA has many fine jurists, but sometimes an issue is decided wrongly. And you just said it unreasonably. How do we get from there? I think in this case we do meet it, because this was critical to, you know, in some of these cases this enhancement is the tail that wags the dog. It's such a long period of time. It's key to his defense of this enhancement. And this is a very basic right to present a defense, not only cross-examination, but just presenting a defense and having a fair trial. It was utterly gutted in this case. Well, counsel, could I interrupt you there? Forgive me for interrupting. But when you say it was utterly gutted, in closing the defense argued, I think I'm – I think I've got this right, prostitution in and of itself is basically a very hazardous occupation by willingly going into cars with strangers and going off somewhere to have consensual sex for money. That argument was made in closing. The jury was instructed about what kidnapping requires, you know, transporting her without her consent. Was it really gutted or wasn't the argument made to the jury? Well, you know, here's what the prosecutor was able to argue that our client couldn't counter. He said, you know, notice how Mr. Foy did not take her to the mall or a public place. He took her to the most secluded place he could so that he could do this. Now, as I said in my brief, the prosecution is allowed to run with that theory. But our client was prevented from saying, look, there's all these evidence about the way this happened, that this started out as a prostitution transaction. I think most people don't know the details of how those work. I didn't really before getting involved in this case. And the idea that one of the first things that happens is let's go somewhere secluded is something that our client couldn't say, look, this is how she's done this transaction three times. If you agree with me that this started out as prostitution, the whole reason for going to the secluded place was that this is what she directed her customers to do. Right. And I understand that, you know, that's critical to the kidnapping or the enhancement. But the problem I see from looking at it purely from the State trial judge's point of view is I don't think it was quite articulated that way. It's the evidence was tendered to show consent as well as a defense to the kidnapping charge. And so in that context, why wasn't it reasonable for the trial judge to say, look, the rape shield law has to be weighed here. You want to put in everything, and therefore I'm going to deny it, as opposed to what you're arguing now, which was he really was trying to do a more limited examination. Well, I think that, you know, the rape shield law was complied with because our client did give notice and have to explain its relevance. And the State had an opportunity for this hearing beforehand if it questioned the accuracy of the evidence, which it didn't in this case. And so in that sense, the idea of surprise and unfair harassment was avoided because he pointed out it's relevant. I think if you look at what I quoted in my brief from the trial attorney, he did say, when the judge said you can't let that in for consent, he said, but it goes to the kidnapping. And the California Court of Appeal actually said that it understood that it goes to kidnapping, too, but it just said, but, you know, it's precluded by the rape shield law. So I think that they used it as just sort of almost the per se bar to this coming in, rather than saying, did he show that it was relevant, and did he comply with it to prevent unfair surprise and harassment, which I think he did in this case. One last question, at least for me. Yes. What Supreme Court case do you think this is an unreasonable application of? You know, I would, if I had to pick one, I'd go with Davis v. Alaska for the idea that a State can have an evidentiary rule that they are following, but when it prevents the defense from presenting relevant, accurate information in support of the defense from cross-examination, then that State policy is outweighed by the defendant's right to cross-examination, confrontation, and due process. Thank you. Thank you. Thank you both. The case is targeted. It will be submitted.
judges: Reinhardt, Thomas, Christen